The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. We will hear argument in number 20-1226 Columbus Regional Hospital v. United States. Mr. Molter, please begin when you're ready. Thank you, Your Honor. May it please the Court. If the hospital has afforded its day in court to prove its claims, it believes it will prevail based on the evidence. But its claims here were prematurely dismissed before any discovery and before any opportunity to present evidence. So this appeal is not about who should ultimately win the case on the merits of the hospital's claims. Instead, this appeal addresses the much narrower threshold questions of, one, whether the hospital pled the minimal allegations required to state an illegal exaction claim, and two, whether the Court of Federal Claims merely has jurisdiction to hear the hospital's contract claims. Because the Court of Federal Claims erred by misapplying the standards for dismissing claims at the pleading stage, its two orders dismissing all of the hospital's claims should be reversed. And I'll start with the lower court's first order dismissing the hospital's illegal exaction claim. Could I ask you a question? This is Judge Bryson. Assuming that we were to agree with you that this case should not have been dismissed, any of the claims, on 12B1 grounds for lack of jurisdiction, we would, that would not foreclose, would it, our determination that it was, would have been permissible for the standards of 12B6 to be satisfied, isn't that right? I don't think that's right. The government below argued on the basis of 12B6, but they have not argued on that basis even as an alternative ground on appeal, at least as I understand their brief. And I would direct the Court's attention for the answer to that question to the standard of review section of the United States brief, which only addressed review for 12B1 jurisdictional grounds. So I do think the appeal... As a general matter, though, we have on numerous occasions at the appellate stage said, I think, that even though the Court of Federal Claims may have been, may have dismissed on 12B1 grounds, that it can be converted, in effect, into a 12B6 dismissal if the circumstances permit. Right? I take your point, and again, acknowledge that 12B6 was raised below. Again, I was arguing that there's a waiver on appeal, but I take your point that as a general proposition, any basis raised below and presented on the record is fair game for this Court. Okay. But also, of course, we don't believe that our claims fail under 12B6. I understand that. Yeah. Go ahead. This is Judge Toronto. Can I ask this question? I think, which is relevant as maybe background to the illegal exaction claim. What do we know, what do we have to assume about what, as a concrete matter, it means for you to say that FEMA recovered the money at issue? Did Columbus wire or transfer the money to FEMA, or did FEMA do something with its access to the SmartLink account? What exactly happened to the extent that either there's agreed on knowledge or to the extent that the record allows us? Yes. And I'll answer your question directly with the caveat at the front. This just illustrates why we need more of a factual record. And I don't think that part of the claim has to be that we paid the money directly to the government. In fact, in Errolinos, Argentinians versus United States, there was no payment to the government. But to answer your question directly, it gets a bit complicated. As I understand it, the hospital did cut a check for a substantial portion of the exacted money. Now, I believe that check was written out to the State Department of Homeland Security, and then the money went to the United States. And then for the remaining portion, I get confused as well. And again, we don't have a record to fully answer that question. But as you alluded to, I think some of that money flowed back through the SmartLink account. But at least a substantial portion was paid with the hospital writing a check. Okay. Thank you. And again, since this is a... The analysis we're engaging in is a 12B6 analysis for the illegal exaction claim, it is important to establish at the threshold what it is that we had to plead. And this court gave that guidance, again, in the Errolinos, Argentinians versus United States case, where this court said, quote, Tucker Act claims must be made for recovery, may be made for recovery of money that the government has required to be paid contrary to law, end quote. So all the hospital had to plead is non-frivolous allegations that one, it paid money at the government's direction, not that it paid money directly to the government, but that it paid money at the government's direction. And number two, that the government's direction to pay that money was in violation of a statute. And as far as I can tell, it is undisputed that the hospital pled both of those allegations. And so it should have been permitted to proceed with its claims beyond the pleading stage. More specifically, as to the payment elements, the hospital alleged in paragraph three of its complaint that, quote, on April 10, 2014, FEMA unlawfully recovered $9.6 million of these funds, the disputed costs, from Columbus, end quote. And we made the same allegation in paragraph 72, 73, 75, and 157. And then for the statutory violation, the hospital alleged in paragraphs 154 through 159 that the government required the hospital to pay the money in violation of section 705C of the Stafford Act because the hospital's expenditures were authorized and reasonable and the purpose of the grant was achieved. The government, of course, disagrees on the merits of whether it violated section 705C, but that's not an issue that goes to the pleadings. So the bottom line is, because we pled each of the elements in a legal exaction claim, it was improper to dismiss this claim at the pleading stage based on Rule 12b-6. Critically, the Court of Federal Claims did not say that any of our allegations were frivolous. Instead, it had two other bases for dismissing our claim, but neither is supported by the law. First... Mr. Wilson, before you leave the illegal exaction issue, let me ask you this question. I'm struggling with the question that as to when money is in the possession and control of a party such that the money being taken out of that possession is an exaction. Suppose, for example, I get a tax refund from the IRS for $1,000 and a week later the IRS sends me a letter saying, this was a mistake on our part. We sent it to the wrong person. Please send the check back. And I contest that. Would that be an illegal exaction by the IRS? Only if the government's recovery of the money was in violation of the statutes, and you certainly... I'm contending that it's in violation. I would be... ...that they didn't make a mistake, that I was entitled to the money. But nonetheless, the money came from the government to me, and they're asking for it back. Is the request to get it back an exaction? I believe it is. And this court in the Norman case even mentioned that tax cases, tax refund cases, are the quintessential example of an illegal exaction claim. Well, but then... I also acknowledge... ...tax refund cases are different from my hypothetical, of course, because there what you're saying is that I was not required to pay all this tax. My hypothetical is that this was money that you received and then they requested that you send it back. That's not the situation in a request for a refund request in the typical COFC case. So I do not know the answer to whether somebody has a property interest and money that the government mistakenly, you know, inadvertently paid to them. But that does highlight an important distinction in this case. This was a penalty. That's what we plead and that's what the evidence will confirm. And so we certainly have an evidence that we certainly have a property interest and the money that we had to pay to the government as a penalty. Take the flood mitigation wall as an example. The government worked with the hospital to approve the project worksheets. It was the government, I think the evidence will show, that actually requested the flood mitigation wall, not the hospital. The government approved the estimated amount for the mitigation wall. It was built. It came in substantially under budget and the government still deobligated the entirety of the amount because of the whole $5 million of the contract because the government decided to penalize the hospital because it disagreed with some of its practices and how it bid the contract. So that's a penalty. That's not the government inadvertently sending money to someone. So agreed, your case sets up a difficult hypothetical, but it's certainly distinct from this one. Ours is a much easier case. Okay. Go ahead. No, can maybe, can you turn to some of the contract issues and let me just ask about one of them that at least is on my mind. The third party beneficiary claim, assume it's true and true enough for 12B purposes that persons like Columbus were intended to be benefited by FEMA's distribution of money to the state. Doesn't ASTRA make clear that that isn't enough for third party beneficiary status? And I'm thinking in particular, I guess of two things, one, the explanation that what the third party be legally entitled to a benefit, not just that the third party benefit. And then second is, but let's just start with that. Yes. So two critical distinctions from ASTRA, one, here the hospital was legally entitled to benefit. Once the project worksheets were approved as a matter of federal regulation, FEMA was obligated to transfer that money for the hospital's benefit. The second critical distinction with ASTRA, and I think this is true of Sue Honey as well, the problem in those cases was that, I have to go into my rebuttal time for a moment. Please continue. I'll add some extra time. The problem in those cases for the plaintiffs were they were trying to supplant the federal government's exclusive regulatory role and go after some other third party because they were a beneficiary under a statute. That's not this type of case. This is a case where we had a contract with the government. We had contractual obligations. They did too. Right. But I think you just switched away from the third party beneficiary analysis when you say we had a contract with the government. Let's assume you didn't. And so just for third party beneficiary purposes, and let's even posit that you gave a persuasive answer on the legal entitlement to the benefit. The as applied portion of ASTRA says when the contract claim is in full a claim of violation of a statute and that statute does not provide for a private right of action, we don't think there can be a third party beneficiary claim because that would essentially nullify the choice not to have a private right of action. Why is that not this? Because in that context, the issue is all about going after some other third party outside the government and the plaintiff to claim third party beneficiary. That's just not the context we have here. This is a third party beneficiary suing the government for the government's own breach of a contract. Again, not trying to supplant the government enforcing regulatory obligations against some other outsider in the world. I believe my time is up and I'll reserve the remainder for rebuttal unless the court has further questions. Okay. Thank you. And we will hear arguments from Ms. Acevedo. Thank you, Your Honor. May it please the court. This court should defer the trial court's dismissal of the complaint for lack of jurisdiction because even assuming that the FEMA-Indiana agreement is the contract, which is obviously a position with which we disagree, the hospital cannot establish a contractual relationship with FEMA. Alternatively, the court can affirm the judgment on the grounds that the case involves a federal question that belongs in district court, namely whether FEMA erred in interpreting the Stafford Act to allow for the deobligation to fund a question that belongs in district court under the APA where similar deobligation claims are routinely and exclusively adjudicated where the hospital has twice sued in connection with the adjudication. Judge Toronto, can I ask you about that point? I'm having trouble understanding how, let's just call it the Bowen ouster of Tucker Act jurisdiction could be supported here without our first deciding that there's no contract claim or illegal exaction claim. What I'm particularly focused on is this. Bowen said that there was district court jurisdiction in that case when two requirements of the APA were satisfied. Although Bowen used the language of jurisdiction, I think it probably doesn't matter that those APA provisions are really about reviewability and jurisdiction vested under 1331. But the two provisions were 702, which that the claim seeks relief other than money damages. And then the second one, 704, the Supreme Court said in Bowen was not satisfied because the final agency action for which there is no other adequate remedy was not satisfied because given the nature of the claim, the remedy in the Tucker Act in the claims court would not have been adequate. If we assume that the illegal exaction and contract claims can go forward on the merits, then why isn't that a perfectly adequate remedy in which case we can stop talking about Bowen? Because here what they're seeking is irrespective of how they characterize their claim, what they're seeking is a declaratory judgment that FEMA aired in interpreting the act under 705. Aren't they seeking money? The fact that they're seeking money is not dispositive. Bowen stands for the proposition that irrespective of whether a claim involves the payment of money, what you look at is whether the claim involves money damages. What does that mean? I'm sorry, that's for 702. Bowen also required that 704 have been satisfied. What I'm trying to focus on, and you don't discuss 704 at all in your brief, and I should say neither did the Seventh Circuit in the 2013 Columbus Hospital case, but why is 704 satisfied by this claim on the assumption that there is an illegal exaction and contract claim litigable on the merits in the claims court? Because the Stafford Act is a complex statutory scheme for the provision of, it's a regulatory scheme for the provision of exaction relief. And it sets forth an enforcement mechanism and it sets forth the procedures that you have to abide by in seeking that relief. And there is an appeals process. There are two administrative levels of appeal. And I would state that 704 would be satisfied by the administrative appeal. There is no basis for the court to conclude that the Stafford Act supports an illegal exaction claim for the very reason that that assumes a property right in what are gifts or gratuities, and moreover, that it assumes a violation of the law. Right, but now you're talking about why you think that on the merits, the illegal exaction claim fails. Now I don't think we're talking about a Bowen point. And if we have to decide that there's no sustainable contract claim or illegal exaction claim, then there's no reason to talk about Bowen at all. Well, I think that, you know, as the seventh judge used to propel in the Seventh Circuit under 702 where, as here, the hospital is challenging an action of the agency, an adverse action of the agency, and they're seeking specific relief or an entitlement to specific funds, the very things to which they're entitled, that mandates that the claim be reviewed in district court under the APA as have all other deobligation claims to date. In terms of 704, we don't discuss it, neither does the court in Columbus, but I would think that that provision... Right, the court, I mean, in Columbus, nobody had to discuss it because it's not a jurisdictional provision, it's a reviewability provision, and the court was raising sua sponte, a question to satisfy itself of its jurisdiction, which didn't require it to address matters that don't go to subject matter jurisdiction. 704 is one of those, I think. Well, I suppose if you would find there would be jurisdiction under 704, you would have to assume that they would have stated a claim for breach of contract or an illegal exaction, which we strongly disagree with. We do not think that they stated those claims for all the reasons you stated in our brief. But my understanding is that the administrative appeals process would have addressed the concerns that were raised in 704. Well, but 704 deals with whether there's an adequate remedy in a court, not an adequate remedy in the administrative agency, right? You can't satisfy... The basic purpose of the APA and the idea of default jurisdiction in a district court is to say that with very, very few exceptions, any agency action, final agency action, will be reviewable in some court. And the default is it's a district court, right? Right. So you can't say that, well, the adequate remedy is satisfied by the agency's own internal procedures, can you? Well, I think the way that I understand APA, I don't practice in the district court, but the way that I understand APA review is they look at whether the agency had discretion to ask or whether Congress had still provided, and if so, whether the agency's action was reasonable. So, you know, I would... If you... I suppose if you believed that they had an illegal exaction or a contract claim, you still have to show that they were seeking money damages. You have to get over that hurdle. Because what they're seeking here is not substitute relief or compensatory relief for suffering or loss. They are seeking the very specific entitlement, the $9.4 million... Or, sorry, $9.6 million of the obligated funds. This is Judge Toronto. Am I remembering right? Isn't there... Hasn't the Supreme Court explained, and now I'm not remembering, whether it's a footnote in Bowen or whether it's in Great West Life, the Tucker Act isn't actually limited to, quote-unquote, money damages. It's monetary relief. Didn't the Supreme Court make that point at one point? I don't recall if the Supreme Court made that point. I think... I simply don't recall. What I understand is that the court has jurisdiction to give incidental equitable relief, right? But that they are limited to money damages or substitute damages for compensatory or suffered loss. Right, so you mentioned the declaratory aspect of this. Does that have a, I don't know, a forward-looking programmatic character in the way that the Supreme Court has emphasized rather heavily in Bowen and even more heavily in Maine Community Hospital recently, I don't know, in its discussion of the limits of what Bowen stood for. Is there something about the relief being sought here, the declaratory part of it, that would, on a forward-looking basis, alter FEMA's way of doing a calculation that it's going to have to do on a regular basis into the future? No, not forward-looking in that sense. And I should say that we think the court should adopt Judge Easterbrook's reasoning in a Columbus case that the Bowen court did not say that only a dispute about one-year component on a multi-year program could be raised under 702. Instead, it distinguished between money as compensating for an injury and money as an entitlement under a grant program. Here, what Columbus is seeking is forward-looking in the sense, in any event, that they're seeking to turn the spigot back off, right? FEMA shut the water off and they went to reopen the channel and continue to receive those appropriated funds. But is that to cover expenses that the hospital has already incurred in doing the construction that is the subject of this? Yes, there's no question the hospital did the construction and they're seeking reimbursement of those costs. Well, this is just a one-time lump sum request for money, right? We don't have any further ongoing dealings between the hospital and FEMA, as I understand it. No, which is exactly why... They want $5 million, period. End of discussion. No more strings attached. That's correct. No more interaction. That's correct. They want the exact $9.6 million of the obligated funds or the very thing to which they believe they're entitled. And the question is, why isn't that monetary relief as plain and simple? Because it's not substitute relief. Money damages are free and clear damages that you can spend in any way you so wish. And Stafford Act grant funds are conditional grant funds that are given for the relief. And I think looking at the statute here would be instructive. Section 5121 of the Stafford Act provides that it is the intent of Congress to provide orderly and continuing means of assistance by the federal government to the state to carry out the responsibilities to alleviate the suffering and damage which result from such disasters. This money is grant money given following a catastrophe. Think food, shelter, utilities, communications, right? Getting electricity back up and running, that kind of thing. This is money that is given conditional for those purposes for such disasters. That is not what money damages are. Money damages are substitute damages that they can spend on upgrading their, you know, staff break rooms or gym facilities, right? That is not what they're seeking here. They are seeking $9.6 million in deobligated funds that were given for such disasters. And that is all the more... Sorry, go ahead, go ahead. No, no, go ahead, go ahead. May I ask a question about a point made in your opposing counsel's brief where they assert that the appropriation, that there would be no possibility of recovery in this case if it went to the district court because the appropriation has expired. Can you address that point? That is certainly premature. It assumes that the money is still not... You say it's premature, but the problem is what we don't want to have happen is if we should say, okay, this case belongs in the district court under the APA and then have the government come into the district court and say, oh, no, you don't, the money is not available because the appropriation has expired. So I'm looking to you for an answer as to the question whether or not that argument would be something that the government would be free to raise or would raise in a district court if we sent this to a district court. I can't say what arguments federal programs would raise or the Assistant U.S. Attorney working with them would raise, but I can say that in the South Florida Water Management case, for example, the agency was found to have erred in its interpretation of the Stafford Act as allowing for deobligation. And there, the court simply ordered the reappropriation of the funds. And it may be in any event that the state, and I don't know this to be true, still has the money in its SmartLink account. What happens is the government gives the money to the state via a SmartLink account. So certain states that are always in a state of catastrophe like, you know, the Gulf Coast states where they get a lot of storms, California, places where they have a lot of earthquakes, fires, storms, constantly have money in reserve in their account, their SmartLink account. So it could very well be that the state still has it. If they don't, the district court could, as they did in the South Florida Water Management case,  Is it clear to you that this money would not be, if there were a judgment in the district court for the $9 million, that it would not come out of the judgment fund? I can't speak to that. I'm not certain if it would come out of the judgment fund or not. I suppose that would be an alternative. I suppose that could be an alternative possibility. But my understanding is that the court would simply order the funds to be reappropriated and they would work it out that way, as they have done previously. Good. Toronto, can I ask a question? I know her time has expired. Oh, yes, please. Sorry. I just want to... As long as the question is of me. That's what I thought. I know. I mean, I might have questions for you later. But so I just want to move you to the jurisdictional point. And I find, admittedly, I will personally admit that I find our precedent on when to dismiss for lack of jurisdiction or failure to state a claim for lack of privity confusing. And what do you think the line is for when it's proper jurisdictional to dismiss for lack of privity and when it's just a failure to state a claim? And, you know, there's a bunch of cases going both ways. And I'm not sure which side of the line this falls on. And in your view, does it ultimately matter? Because if we find that it was incorrect on jurisdiction, couldn't we just convert it to a failure to state a claim? Certainly. Ultimately, I don't know that it matters because I think you can convert it. But I think the line is whether or not you find that there was a contract, an express or implied contract. Because irrespective of whether or not, you only get privity if there's a contract, right? You have to first find a contract. And then you have to also establish privity. Nearly pleading as the plaintiff suggests, a non-frivolous claim of a contract, it's not enough. They have to show a contractual relationship. And the cases in this court have routinely held that whereas as here, the agency is simply exercising a regulatory or sovereign function, even where it has intimate control or substantial regulatory involvement. I get that part of your argument. Can I move you on from that, though? Let's assume that we think the agreement between the United States and Indiana is a contract. I know you don't think that's true, but I should have put that in my hypothetical. Let's assume there is a contract here, but there's still your argument is that there's a lack of privity with the hospital. I'm still confused as to whether that's true. Then I think that would be a 12B6. I think once you decide that there's a contract, it's failure to state a claim based on the elements of the contract. But we here don't think that they've stated a contract, that we've done it. It's jurisdiction. Now, when you say that you believe they haven't pointed to a contract, you mean that the contract or the arrangement between FEMA and the state, you say, is not even a contract, never mind the relationship between FEMA and the hospital, right? That's correct. It's our position that FEMA – I'm sorry, go ahead. Well, I was just going to say, so if I understand your position, you're saying if the relationship between FEMA and the state is a contract, then the dismissal should be, if any, on 12B6 as opposed to 12B1. That's the position I had thought I understood you to set out in your response to Judge Hughes. Is that right? Oh, okay. So I was thinking a contract with the hospital. They would have to find a contract with the hospital. That's what I was afraid. So to be clear, assume that there's a contract between FEMA and Indiana. Does that result – does any further argument about the contract-based rights of the hospital, then is that subject, in your view, to 12B1 dismissal on jurisdictional grounds? Yes. And if so, for example, why would that be true of the third-party beneficiary claim, for example? Why doesn't that involve an inquiry that goes beyond simply saying that there's no jurisdiction for the court to even consider that claim, even though the claim is asserted as a claim within the jurisdiction of the Court of Federal Claims? So the way I understand the Tucker Act, under 1491A1, right, the hospital has to assert that it has a contract with, expressed or implied, with the United States. Well, it can assert that it is a third-party beneficiary. We have lots of cases in which we've said the Tucker Act allows you to make a third-party beneficiary claim, even though you weren't the principal contracting party, right? Certainly. But I think that you would have to establish they had third-party beneficiary, because in addition to a contract, you must also have privileges. You would have to plead, which they have done, and then it would have to be a pleading that would be non-frivolous or not simply devised for purposes of establishing your right to proceed in that forum. But the question is, given the fact-based nature of a third-party beneficiary claim, isn't that inquiry something that's hard to do as a jurisdictional matter? Generally, it is something that's resolved on the merits, but I think they have to plead one and they haven't pled one here. I think that is a jurisdictional issue. If you find that there is a contractual... They haven't pled a third-party beneficiary. I think that's one of their claims. It is one of their claims, but we don't believe that they've adequately pled it here, because they have to show that the FEMA-Indiana agreement was for its intended direct benefit. What does that mean? As Your Honors were discussing earlier with my colleague, Mr. Molter, that means that the hospital would have to, at the time of the FEMA-Indiana agreement, have understood that and reasonably relied upon the entry of that agreement as intended to benefit them. And the agreement merely says that it benefits 29 counties and additional areas to be determined, and then that the money would be limited funds appropriated would be prioritized. There's no indication whatsoever, and frankly it would cripple the agency's ability to provide disaster relief. Disaster relief, by its very nature, is something that they need to be able to give without identifying the benefit. They cannot know. They don't even know the hospital exists on the day that they entered the FEMA-Indiana agreement, and how can they possibly enter into these disaster grant agreements going forward? This is Judge Taranto. Can I just ask you this? Yes. Does third-party beneficiary law, either in the government context or the restatement context more generally, allow the relevant intent to run to a class of beneficiaries rather than one already individually identified? It does. Why isn't this, at least plausibly, maybe even obviously, that is... Because the class... I'm sorry. No, no, no. The hospital was at least allegedly and maybe even clearly among the group of those in need to perform services that it is FEMA's function to fund. Because the mere fact that somebody stands to benefit from an agreement doesn't mean that they are a third-party beneficiary of it. The class, in this case, would be the 29 counties that were enumerated in the appendix at page 1020. The 29... Any enumerable municipalities and entities that are unknown and unknowable at the time of entry into the agreement, that's who the class is. It's way too broad to assume that the hospital was an intended beneficiary. The test is, was the agreement directly intended to benefit them? And we cannot say that. The agency and the state, in turn, have finite resources to address catastrophic damage and alleviate suffering from these disasters. And that funding has to be divvied up according to need and prioritized. They don't... It's not to make anybody whole. This is to alleviate suffering. And we simply cannot... But am I right in understanding that no money actually gets approved for payment without FEMA signing off on the project worksheets? I don't know what the... So it's not an open... I'm just entering into the agreement. It's not kind of an open checkbook for later claimants. So the way that the statutory framework works, the state enters into an agreement and they become the sole grantees for all of the funds. FEMA does have a role in overseeing the project worksheets. They approve the expenditure of the funds. That is correct. But it is the state that's ultimately responsible for the disbursement of those funds and the retrieval of them if they're improperly sent. And this court has routinely held such routine regulatory oversight, acting in their... You know, FEMA has an interest in visibility and ensuring that the... and making sure that they're spent in accordance with the provisions of the Stafford Act so as not to avoid waste, fraud, abuse, those sorts of things. They have a duty to taxpayers to ensure the money is spent appropriately and in accordance with the conditions of the Act. And that role alone is not enough to impute liability here to the agency. If you have nothing else and if my colleagues have no further questions, we should probably turn back for rebuttal. Thank you. Thank you, Your Honor. Thank you. Patrick, how much time did we go over? For Ms. Salcedo? Yes. About eight to nine minutes. Okay. How about rebuttal for 10 minutes then, please? Okay. Yes, Your Honor. If you need it. Thank you, Your Honor. A few points to pick up where the United States left off. I don't think the government can both say that beneficiaries can all seek redress in the district court and then say somehow it would cripple FEMA if they pursued third-party beneficiary claims in the court of federal claims. Secondly, the United States has identified multiple areas in which there's a need for evidentiary development, which is fundamentally inconsistent with the 12B6 dismissal. So, for example, the United States says one of the questions for a third-party beneficiary is whether the hospital reasonably relies on the contract. You know, reasonable reliance is the quintessential example of something that's a fact-based question that has to have evidentiary development. We've also pointed out before that the hospital is the only critical care facility in the area, and so obviously the parties would have intended that it would be within the class of beneficiaries, especially when a contract repeatedly refers to local hospitals. And the government responds in their briefing that, well, the record doesn't currently support or doesn't prove that the hospital is the only critical care facility in the region, again, simply illustrating that there needs to be factual development before this claim can be decided on the merits. And before I leave the third-party beneficiary, you know, this is a problem of the government's own making to the extent the government sees this as a problem. I would direct the court to a case that actually rejected a third-party beneficiary claim, the Wakuku v. Martinez case from the Federal Circuit. That was another Native American housing case with HUD, and this court in its initial analysis said, you know, this clearly seems to be a plaintiff within the class that was supposed to be benefited under the contract, but the fact was that the contract expressly disclaimed any third-party beneficiaries. And you have nothing like that here. If the government, if it was critical to the government not only that there be no third-party beneficiaries, but that they be able to prevail in that argument at the pleading stage, then certainly they should put that language in these contracts like the United States does in so many other contexts. The government focuses also quite a bit on the previous Columbus litigation and the Seventh Circuit, and I just want to emphasize, again, those are fundamentally different types of claims. The Seventh Circuit litigation was about money that was not awarded to the hospital. The hospital got an award, and they thought they should have been awarded more, and they lost that case. This is the other end of the spectrum where the money was already awarded, that the money came to the hospital, but there was an exaction, a breach of contract. The hospital had to pay money over to the government. In that sense, that's also inconsistent with the government characterizing in the previous argument that this is the nature of our claim is we're complaining that FEMA shut the spigot off. Again, not true. The spigot was already shut off. They asked us to write a check. And, again, the flood wall is a perfect illustration of this. The flood wall was something, as I understand it, that FEMA wanted. So after working directly with the hospital between FEMA, the wall was built. It primarily benefits FEMA, I would say. And then FEMA exacted the money after the fact. So, again, this is not the hospital trying to turn the spigot back on. Mr. Molcher, this is Jeff Bryson. Returning to the Seventh Circuit case, was there any basis in that case attributable to a contract itself, or was the ground on which Columbus sought relief entirely non-contractual? Entirely non-contractual. There was no breach of contract claim, and there was no illegal exaction claim. And that's an important distinction, too, with the other cases. The United States points to it when they say that deobligation claims are routinely decided in the district court. It's just not true that there are any deobligation claims based on breaches of contract or illegal exaction. In fact, their lead case, the Rebuild Northwest Florida case, was a case where the plaintiff expressly disclaimed any contract theory, and the district court expressly stated if there had been a contract claim, there would be no jurisdiction in the district court. So I'm aware, and the government has not cited, I'm aware of no case alleging a breach of contract or illegal exaction for deobligation that's been decided in the district court. Now, if we were to decide that the Court of Federal Claims, the relief sought before the Court of Federal Claims, at least setting aside the illegal exaction for the moment, but just the other contract-based claims, was in the nature of an equitable, call it restitution-like form of recovery, and therefore the Court of Federal Claims did not have Tucker Act jurisdiction, would that not then tell us that there was no adequate remedy at law in the Tucker Act for purposes of Section 704? I think that's correct, although as you noted before, we haven't briefed 704, and so I'm not as familiar, or I haven't given as much thought to that analysis. But I agree, in the Court of Federal Claims, we need to be seeking monetary damages, which I think we are, and I think that also flags that it's inconsistent for the government. If you're wrong on that for purposes of the Tucker Act, then wouldn't that mean that both Section 702 and Section 704 would be satisfied? Because the fact that it wasn't money damages, and let's assume for the moment there's no difference between monetary relief and money damages, although that's another question, but would that not lead us to conclude that both Section 702 and Section 704 were satisfied? I think so. I'm not sure. If the point is that there would be a forum for redress, I think I'm following you. Okay, thank you. Circling back, it is inconsistent for the government to say that the relief we are seeking is for the original strings-attached funding, and then to say, but if we're in the district court, maybe monetary relief could be awarded because maybe Indiana's got some other money from some other disaster still sitting around that might be able to make us whole. I think, again, those things are just two fundamentally inconsistent propositions, and it's especially important here because, as Judge Solemson recently stated in the Slidewell case, as this court emphasized in the Lume Tribe, the United States does have a pattern of this sort of judicial ping-pong and taking inconsistent positions in the district court and the Court of Federal Claims. Certainly not saying that my opposing counsel here has, but that has been a problem with the United States, and it sounds like it's set up the same way here. The United States is not willing to say or make a judicial admission or something that would subject it to some sort of judicial estoppel that that money would be available if we were kicked over to the district court. Why wouldn't that money come out of the judgment fund if a judgment were entered in the district court action? My understanding from the cases that the government has cited, that it can't in the district court APA cases. Part of the appropriations clause of the Constitution precludes that from happening. Is that because the APA court does not have jurisdiction to issue money damages award? I think that's part of it. And then also I think the district court doesn't have constitutional authority to order money that you've characterized as part of an appropriation when the appropriations expire. So it's getting into semantics, I acknowledge. Okay, thank you. Do you have anything else? I'll just wrap up with what I think are three critical concessions from the United States. They've agreed that Tucker Act jurisdiction quote, requires no more than a non-frivolous allegation of a contract with the government. End quote. And that's at the appellee's brief on pages 35 through 36. And I think we've established here today that the hospital has made a non-frivolous allegation of a contract. And the government doesn't disagree with this court's statements in cases like engaged learning, trauma services, total medical management, that as with the dispute over the scope of a contract, the determination of whether or not a contract in fact exists is not jurisdictional. And finally, the government agrees that, it is not dispute, excuse me, that a grant agreement may be a contract where it meets the elements of one. That's at page 41 of their brief. And here, you know, we pretend we've pled the elements of it. So for all those reasons, we request that this court reverse the court of federal claims on both of its orders dismissing all the hospital's claims and to amend the case for further proceedings. Thank you. So thanks to both counsel. The case is submitted. And that concludes the argument session for this morning. Thank you. The Honorable Court is adjourned until tomorrow morning at 10 a.m.